IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNN M. DOOLEY | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 C 1192 |
| | ) | |
| v. | ) | Judge St. Eve |
| | ) | |
| EVANSTON NORTHWESTERN HEALTHCARE CORPORATION, an Illinois Corporation, and SUSAN R. BESAW, an individual, | ) ) ) ) | Magistrate Judge Nolan |
| | ) | **Trial By Jury Demanded** |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

For her First Amended Complaint against Defendants pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff Lynn M. Dooley, through her attorneys Michael J. Merrick and Merrick Law Firm LLC, states as follows:

### Jurisdiction & Venue

1. Subject matter jurisdiction is premised on the federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. §§2612-2615 ("FMLA"), and Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"), arise under federal law.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) as Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

### Parties

3. Plaintiff Lynn M. Dooley ("Plaintiff" or "Mrs. Dooley") is a citizen of the United States and resident of the state of Illinois.

4.      Defendant Evanston Northwestern Healthcare Corporation ("ENH" or "Defendants" collectively) is an Illinois corporation which operates an integrated healthcare system including Evanston Hospital in Evanston, Illinois.

5.      Defendant Susan R. Besaw ("Ms. Besaw" or "Defendants" collectively) is a resident of the state of Illinois and employee of ENH.

### Common Allegations

6.      At all relevant times herein, Mrs. Dooley was employed by ENH as a Billing III Coordinator in the Lab Services Department.

7.      At all relevant times herein, Ms. Besaw was employed by ENH as Manager of Operations in the Lab Services Department and was one of Mrs. Dooley's supervisors.

8.      On Wednesday morning, November 23, 2005, Mrs. Dooley's 10-year-old son Liam Dooley ("Liam") began experiencing serious heart problems and had to be rushed to the emergency room at Lutheran General Hospital. Liam was diagnosed with Idiopathic Dilated Cardiomyopathy, or inflammation of the heart.

9.      Mrs. Dooley called Ms. Besaw the following day, the Thanksgiving holiday, to advise her of Liam's hospitalization.

10.     The next day Mrs. Dooley again called Ms. Besaw to give her an update on Liam's medical condition. Mrs. Dooley told her that Liam could need a heart transplant to survive. Mrs. Dooley also told her that she did not want to lose her job.

11.     Mrs. Dooley reported to work the following Monday to make arrangements to take time off work to care for Liam.

12.     Ms. Besaw told Mrs. Dooley to keep coming to work a couple of days a week.

13.     Mrs. Dooley told Ms. Besaw that she did not want to work part time. Mrs. Dooley told her that she wanted to take a full medical leave because Liam was in dire straits.

14.     Ms. Besaw told Mrs. Dooley that the medical leave would be unpaid so she should at least work part time for some income.

15.     Ms. Besaw also told Mrs. Dooley that she should take intermittent leave so it would last longer.

16.     Ms. Besaw also told Mrs. Dooley that she should work part time in order to be able to pay the premiums on her family's health insurance.

17.     Ms. Besaw also told Mrs. Dooley that she should work part time in order to give her mind a "stress break" from having to deal with Liam's medical problems.

18.     Mrs. Dooley made it clear to Ms. Besaw that she wanted to take full medical leave to care for her son, but to no avail. Mrs. Dooley finally relented and went on intermittent leave in order to keep her job and her family's health insurance.

19.     On December 3, 2005, Liam was transferred to Children's Memorial Hospital.

20.     The next day, Liam went into cardiac arrest, was revived, and was put on life-support.

21.     The physicians told Mr. and Mrs. Dooley that if Liam did not receive a heart transplant in the near future, he would not survive. Liam was immediately placed on a waiting list for a donor heart.

22.     Mrs. Dooley again asked Ms. Besaw to allow her to take full medical leave to be with Liam while he was on life-support.

23.     Ms. Besaw again refused to allow Mrs. Dooley to take full medical leave. Instead, she asked Mrs. Dooley which two days she wanted to work.

24. Mrs. Dooley again relented and said she would work Tuesdays and Thursdays in order to keep her job and her family's health insurance.

25. Mrs. Dooley had difficulty working part time because there was a heavy workload as no one covered for her on the days she was out on leave, and it was hard to focus on work while her son was in the hospital on life-support.

26. Some of Mrs. Dooley's coworkers offered to donate vacation days so Mrs. Dooley could take time off to be with her son, but ENH management would not allow it.

27. A donor heart was identified on Christmas Day, December 25, 2005, and Liam underwent successful heart transplant surgery later that day.

28. The physicians told Mr. and Mrs. Dooley that Liam would be discharged in a few weeks and would then need to be cared for at home while he continued to recover.

29. In early January 2006, Mr. and Mrs. Dooley took training classes at the hospital to learn how to care for Liam when he returned home. For example, the Dooleys were taught and tested on how to administer the large amounts of medication Liam would require during his recovery at home and when he returned to school.

30. Mrs. Dooley again asked Ms. Besaw and Mrs. Dooley's immediate supervisor whether she would be allowed to take full medical leave to care for Liam at home after his discharge from the hospital. Mrs. Dooley explained that home care was not covered by insurance and that her husband had to return to work because he had been off work for several weeks to care for Liam and their other children.

31. Instead of allowing Mrs. Dooley to take full medical leave, Ms. Besaw suggested that Mrs. Dooley try to get some help from Liam's grandparents so she could continue to work.

32. Mrs. Dooley explained that it was simply not feasible to rely on Liam's elderly grandparents to care for him due to the complexity of the care required and physical requirements such as carrying Liam upstairs.

33. Ms. Besaw still refused to allow Mrs. Dooley to take full medical leave.

34. Subsequently, Mrs. Dooley repeatedly asked Ms. Besaw and Mrs. Dooley's immediate supervisor whether she would be allowed to take full medical leave.

35. Ms. Besaw kept telling Mrs. Dooley, "Don't worry," but no one from ENH ever told her that her request for full medical leave to care for Liam at home would be granted.

36. Given that Liam's discharge from the hospital was imminent and Ms. Besaw and ENH refused to approve her request for full medical leave, Mrs. Dooley believed she had no other choice but to resign her employment in order to care for Liam.

37. Mrs. Dooley typed a letter of resignation with an effective date of January 11, 2006, and attempted to deliver it to her immediate supervisor on January 9, 2006. Mrs. Dooley discovered that her immediate supervisor was out of the office so she went to Ms. Besaw's office to deliver the letter.

38. Ms. Besaw read the letter and asked Mrs. Dooley why she was resigning.

39. Mrs. Dooley explained to Ms. Besaw again that she had no choice but to resign because no one at ENH would approve her request for full-time medical leave and Liam would be coming home from the hospital within the next few days.

40. Instead of approving Mrs. Dooley's request for full medical leave, Ms. Besaw asked her whether she had considered taking a "zero-hours" position. An employee in a "zero-hours" position works without benefits to cover for absent employees.

41. Since her request for full medical leave had still not been approved, Mrs. Dooley was forced to go ahead with her resignation.

42. Mrs. Dooley worked on January 11, 2006, which was her last day with ENH. Her health insurance and other ENH benefits terminated on or about January 11, 2006.

43. Liam was discharged from the hospital and Mrs. Dooley began caring for him at home on January 16, 2006.

44. In or about February 2006, Mrs. Dooley received a phone call at home from an ENH human resources employee who said she had some questions regarding Mrs. Dooley's medical leave. She asked Mrs. Dooley whether she wanted to take full or intermittent leave. Mrs. Dooley explained to the employee that she had to resign in January 2006 in order to care for her son.

45. Mrs. Dooley and Ms. Besaw, and Mrs. Dooley and ENH, entered into separate tolling agreements effective November 27, 2007. Pursuant to said agreements, all claims set forth herein are deemed timely filed.

## COUNT I

## FMLA INTERFERENCE AGAINST BOTH DEFENDANTS

46. Mrs. Dooley was an eligible employee under the FMLA.

47. ENH is a covered employer under the FMLA.

48. Ms. Besaw is subject to individual liability under the FMLA for her actions described herein.

49. Liam suffered from a serious health condition for purposes of the FMLA.

50. Mrs. Dooley was entitled to take full leave under the FMLA to care for Liam.

51.　Defendants Besaw and ENH willfully interfered with Mrs. Dooley's substantive rights under the FMLA in several respects including, but not limited to, by: failing to give her proper notice of her rights under the FMLA; evading and failing to answer her questions about FMLA leave; dissuading her from exercising her rights under the FMLA, including her right to take full medical leave; refusing to allow her to take full medical leave; and forcing her to resign her employment and lose her health insurance and other benefits in order to care for Liam.

52.　As a direct and proximate result of Defendants' unlawful conduct, Mrs. Dooley suffered damages.

## COUNT II

### FMLA DISCRIMINATION/RETALIATION AGAINST BOTH DEFENDANTS

53.　Plaintiff incorporates by reference paragraphs 1 through 52 as though fully set forth in this Count II.

54.　Ms. Besaw and ENH willfully discriminated and retaliated against Mrs. Dooley by engaging in the willful misconduct described above because she had exercised and attempted to exercise her rights under the FMLA.

55.　As a direct and proximate result of Defendants' unlawful conduct, Mrs. Dooley suffered damages.

## COUNT III

### ERISA SECTION 510 CLAIM AGAINST DEFENDANT ENH

56.　Plaintiff incorporates by reference paragraphs 1 through 55 as though fully set forth in this Count III.

57.　Mrs. Dooley was qualified for her job and was a member of ENH's group health insurance plan which is a self-funded ERISA plan.

7

58. Mrs. Dooley and the other members of her family, including Liam, were beneficiaries of the plan.

59. Defendants knew that Liam's future medical care, which will likely include another heart transplant, will be extremely expensive.

60. Defendants engaged in the willful misconduct described above with the intent to cause Mrs. Dooley's employment to terminate thereby depriving her of health insurance benefits.

61. As a direct and proximate result of Defendants' unlawful conduct, Mrs. Dooley suffered damages.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BOTH DEFENDANTS

62. Plaintiff incorporates by reference paragraphs 1 through 61 as though fully set forth in this Count IV.

63. Defendants' conduct described herein was extreme and outrageous.

64. Defendants either intended to inflict severe emotional distress or knew that there was at least a high probability that their conduct would inflict severe emotional distress upon Mrs. Dooley.

65. Defendants' conduct directly and proximately caused Mrs. Dooley to suffer severe emotional distress.

## COUNT V

### TORTIOUS INTERFERENCE WITH EMPLOYMENT EXPECTANCY AGAINST DEFENDANT SUSAN BESAW

66. Plaintiff incorporates by reference paragraphs 1 through 65 as though fully set forth in this Count V.

67. At all relevant times herein, Mrs. Dooley had the reasonable expectation of continued employment with ENH.

68. Defendant Besaw knew of Mrs. Dooley's reasonable expectation of continued employment with ENH.

69. Without lawful justification, Defendant Besaw intentionally and willfully interfered with Mrs. Dooley's employment expectancy and prevented it from ripening solely for her own benefit and/or to injure Mrs. Dooley.

70. As a direct and proximate result of Defendant Besaw's unlawful conduct, Mrs. Dooley suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants for the following relief:

A. Lost wages and benefits in an amount to be proven at trial;

B. Compensatory damages in an amount to be proven at trial;

C. Interest;

D. Liquidated damages;

E. Punitive damages;

F. Appropriate equitable relief including back pay, reinstatement/front pay and restitution;

G. A declaratory judgment that Defendants violated Plaintiff's rights as alleged herein;

H. An injunction enjoining Defendants from engaging in any future acts of discrimination or retaliation against Plaintiff;

I. Plaintiff's reasonable attorneys' fees and costs incurred herein; and

J. For such further relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein.

LYNN M. DOOLEY


By: /s/ Michael J. Merrick
Attorney For Plaintiff

Michael J. Merrick
Merrick Law Firm LLC
150 North Michigan Ave., Suite 2700
Chicago, Illinois 60601
Tel (312) 269-0200
Fax (312) 269-0800
merrick@merricklawfirm.com


## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing document stamped with the Clerk's e-filing receipt was served upon:

Evanston Northwestern Healthcare Corporation
c/o Jeffrey H. Hillebrand, Registered Agent
1301 Central Street
Evanston, Illinois 60201

via U.S. Mail on March 3, 2008.


/s/ Michael J. Merrick